Tuesday, December 26, 2005

FILE UNDER SEAL

*IN CHAMBERS OF*
*U.D.J. DEARIE*
**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ MAR 2 4 2006 ★

BROOKLYN OFFICE

Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  U.S. v. Persichetti
     Criminal Docket 94-1236 (S-1) (RJD)
     Letter/Motion for Inquiry/Hearing

Dear Judge Dearie:

I respectfully request that you initiate an inquiry, and after the inquiry, have a hearing into the matters discussed herein. A very brief summary of the relevant facts appear below.

1.  I pleaded guilty in the above referred to case in the Eastern District of New York on February 8, 1995. Pursuant to the Prosecutors motion for a downward departure because of my substantial assistance and testimony for the government, your Honor sentenced me to 16 years in prison. (See Exhibits 1-3).

2.  Pursuant to the request of the U.S. Attorney for the District of New Jersey, I was interviewed by law enforcement officers relating to murders that took place in New Jersey. I was interviewed in the year 2000 while I was incarcerated at FCI Marianna. Present at this interview were the following: FBI Agent Bruce Kamerman, Homicide Detective Robert Potter, AUSA Marc Agnifilo, and my Case Manager Doug Thompson. Although I had nothing to do with these murders, the interviewees told my that I would receive a Rule 35 downward departure motion if I cooperated and testified for the government; although the interviewees wouldn't "promise" me this, they said I would get a Rule 35 motion, and that I "wouldn't get screwed when it came time for my Rule 35 sentence reduction." This promise was witnessed my my Case Manager, Doug Thompson; he attended this meeting specifically to be a witness for me, and he signed a BOP "Cop Out" verifying that the above is true. (See Exhibit 4).

3.  After I cooperated and testified for the government (which resulted in a conviction of organized crime defendants), all concerned law enforcement officers refused to file a Rule 35 Motion for me. They claimed that I wasn't entitled to one only because I wasn't specifically "promised" one. Although this may technically be true, they told me they couldn't promise me one only so the defense attorney wouldn't know about it. They said I would be a more valuable witness for them if my Rule 35 motion wasn't "on the record" until after the trial.

4.  All of the above referred to "assurances" that I would receive a Rule 35 motion were also made to me over the telephone by AUSA Marc Agnifilo. These telephone conversations were tape recorded by the BOP taping system, but I have not been able to get copies of the tapes or transcripts thereof.

Page 2
December 26, 2005
<u>U.S. v. Persichetti</u>

As the facts above show, I was told I would receive a Rule 35 motion for my cooperation, and the only reason I cooperated, was because I was "assured" of getting one.  I actually believed that I would get a Rule 35 motion, and I was shocked when I didn't receive one.

Although I wasn't promised one according to what the law enforcement officers say, the facts show that I was mislead, that the defense lawyer was mislead, the trial court judge in New Jersey was mislead, and the jury in New Jersey was mislead.  If this is true, than a grave miscarriage of justice has been committed.

As a result of the above facts, I respectfully request that this Court initiate an inquiry to confirm that the facts I allege are true.  If the court's inquiry/investigation show that these facts are true, then I respectfully request that this Court schedule a hearing to get live testimony to put these facts on the record.

Lastly, if the facts I allege are shown to be true, I respectfully request that the Court do whatever is necessary to correct the grave injustice that I have suffered.


Respectfully submitted,

Anthony Persichetti
44930-053
P.O. Box 157
Watsontown, Pennsylvania 17777

*Exhibit 1*

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

One Pierrepont Plaza
Brooklyn, New York 11201

Mailing Address:   147 Pierrepont Street
Brooklyn, New York 11201

February 15, 2002

Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Anthony Persichetti
      Docket No.: 94 Cr. 1236(RJD)

Dear Judge Dearie:

We write in opposition to defense counsel's request that a letter from the United States Attorney's Office for the District of New Jersey be accepted as a motion filed pursuant to Rule 35 of the Federal Rules of Criminal Procedure. It is our position that the Court, which denied petitioner's previous Rule 35 request, should deny the instant request as well.

On January 23, 1998, pursuant to a cooperation agreement with the government, the petitioner was sentenced to a term of imprisonment. At the time of sentencing, the Court received a motion filed by the United States Attorney's Office for the Eastern District of New York ("the Office") pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) informing the Court of the petitioner's substantial assistance to law enforcement. The petitioner received a term of imprisonment that was less than he would have received had he been sentenced pursuant to the sentencing guidelines.

On February 2, 1999, the petitioner wrote the Court that the Office had breached a promise to file a Rule 35 motion based on the petitioner's post-sentence assistance to law enforcement. In answer, the Office denied that such a promise had been made and represented that its obligation to the petitioner was met by filing its § 5K1.1 letter with the Court. The petitioner's application to be re-sentenced was thereupon denied.

1

On January 24, 2002, the petitioner wrote his attorney, in a letter that is now part of the Court file, that he again was promised a Rule 35 motion by federal prosecutors and that this promise also had been breached. This time the alleged promise was made by a prosecutor with the United States Attorney's Office for the District of New Jersey ("the NJ Office"). The petitioner stated that a prosecutor from the NJ Office had promised him Rule 35 consideration assistance in exchange for the petitioner's assistance in a federal homicide investigation and his testimony at trial.[1] Because of this assistance and because of the promises allegedly made to him, the petitioner argues that this Office is obligated to perform a "ministerial duty" and file the Rule 35 motion with the Court. Petitioner's January 24, 2002 letter ("letter") at pg. 2. We disagree.

First, as a matter of law, the petitioner is time-barred from receiving the benefits of a Rule 35 motion. Rule 35 provides, in relevant part, that "...within one year after the sentence is imposed the court may reduce a sentence to reflect a subsequent substantial assistance in investigating or prosecuting another person ... The court may consider a government motion to reduce a sentence made one year or more after the sentence is imposed if the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after sentence is imposed." FRCP Rule 35(b). On point, the court in United States v. Carey, 120 F.3d 509, 512-13 (4th Cir.1997), found that Rule 35 "unambiguously provides that the one-year limitation may be relaxed only where the information provided by the defendant was "not known by the defendant until one year or more after the imposition of sentence...This language does not allow for an interpretation that the one-year period may be relaxed when the information was known during the one-year period but that the cooperation could not have been completed within the one-year period."

Similarly, in United States v. McDowell, 117 F.3d 974 (7th Cir. 1997), the court found that

> [W]e hold that a district court lacks the power to grant a Rule 35(b) motion where the government has not filed the motion within the one-year period and there is no indication

---

[1] The petitioner's cooperation with the NJ Office was set forth by that office in its October 9, 2001 letter to this Office. A copy of this letter was included with defense counsel's February 1, 2002 letter to the Court.

that the exception to the one-year rule was
been satisfied.

McDowell, 117 F.3d at 980.

Here, the petitioner is ineligible for Rule 35 consideration
because he was sentenced in 1998 and there is no reason to believe
that the information possessed by the petitioner and shared with
New Jersey "...was not known by the defendant until one year or
more after sentence [was] imposed." FRCP Rule 35(b).

Second, based on information received from the NJ Office, the
petitioner was never promised that a Rule 35 motion would be filed
on his behalf. In the attached affidavit, Assistant United States
Attorney Marc Agnifilo of the NJ Office unequivocally states that
"...Mr. Persichetti was never promised a Rule 35 motion. Moreover,
it was made abundantly clear to him at every stage in the process
that there was no such promise, and that no such promise could in
fact be made by anyone in the District of New Jersey." Agnifilo
affidavit at p. 5. The petitioner, having misrepresented statements
made to him by this Office, now misrepresents the facts of what he
was told by the NJ Office.

Accordingly, we respectfully submit that the petitioner's
application, flawed legally because it is time-barred and flawed
factually because it is inaccurate, should be denied in all
respects.

Respectfully submitted,

ALAN VINEGRAD
UNITED STATES ATTORNEY

By:
William Curin
Assistant U.S. Attorney

cc:  Clerk's Office

Howard Jacobs, Esq.
401 Broadway, Suite 1902
New York, N.Y. 10013

Exhibit 2

United States District Court
Eastern District of New York
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
United States of America,

                            94 Cr. 1236 (RJD)

       v.

                            AFFIDAVIT

Anthony Persichetti,

       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

    I, Marc A. Agnifilo, being duly sworn, depose and state that
the following is true to the best of my knowledge and belief:

    1.    I am an Assistant United States Attorney in the
District of New Jersey.  In that capacity, I investigated and
prosecuted a criminal matter in the District of New Jersey
entitled United States v. Elvis Irizarry, et al., 00-353(NHP).

    2.    The Irizarry case involved a criminal enterprise in the
District of New Jersey and elsewhere which was engaged in
racketeering activity including five murders and other serious
violent crimes.  With the exception of Elvis Irizarry, the
enterprise's members entered guilty pleas to either drug or
... ... ... ... ... prior to trial.  Two went again ... and ... ...
to trial in the summer of 2001 before the Honorable Nicholas H.
Politan.  Irizarry was ultimately found guilty of all counts and
sentenced to three life terms plus 85 years in prison.

    3.    One of the witnesses at the trial of Elvis Irizarry was
Anthony Persichetti.  Although Mr. Persichetti had no dealings
with Irizarry, he provided information linking other members of

the charged enterprise.  Mr. Persichetti also provided
information about a criminal relationship between one of the
homicide victims and Irizarry's criminal superior.

4.    Mr. Persichetti first came to the attention of the
investigators during 1999.  It was learned, however, that the
Honorable Raymond J. Dearie had issued an Order dated February
16, 1999 directing that the United States Attorney not interview
Mr. Persichetti pending further order of the court.

5.    Accordingly, the undersigned wrote a letter to the
Honorable Raymond J. Dearie which briefly explained the
Government's need to speak with Mr. Persichetti and asked
permission for the representatives of the District of New Jersey
to interview him in connection with the pending New Jersey
investigation.  Such permission was granted, and the undersigned
was so informed by telephone.  Additionally, the undersigned
received from the Court a copy of the letter seeking permission
with a handwritten notation granting such request.

6     Only after receiving this permission from Judge Dearie
did the undersigned inform Federal Bureau of Investigation
Special Agent Bruce Kamerman and Hudson County Homicide Detective
Robert Potter that they could interview Mr. Persichetti.

7.    Prior to the interview, the undersigned told S.A.
Kamerman and Detective Potter (A) that they must not make any
promises about anything, and (B) that they should not even speak

2

to Mr. Persichetti about his pending case in the Eastern District of New York (E.D.N.Y.).

8.    On or about November 2, 2000, S.A. Kamerman and Detective Potter traveled to a location to meet with Mr. Persichetti.  On information and belief, Mr. Persichetti was told that he was being promised absolutely nothing in exchange for his cooperation.  It was further explained to him that S.A. Kamerman and Detective Potter were representatives of the District of New Jersey, and that they would not, and could not, speak to him in any manner about his case in the E.D.N.Y.  It is my understanding that Mr. Persichetti stated that he understood these parameters and agreed to cooperate with the investigation.

9.    On or about May 16, 2001, the undersigned traveled along with S.A. Kamerman and Detective Potter to interview Mr. Persichetti.  At this meeting, Mr. Persichetti was told that we could not promise him anything in connection with his E.D.N.Y. case, and that we were not permitted to so much as discuss the case with him.  Additionally, at no time did the undersigned or the case agents represent to him that a Rule 35 motion would be made on his behalf.

10.   Jury selection in the Irizarry trial started on May 29, 2001.  At some time prior to jury selection, the undersigned informed Mr. Howard Jacobs, Esq., that his client had agreed to cooperate in the case, and that he was being brought to New

5

Persey to testify at a trial. At no time did the undersigned represent to Mr. Jacobs that a Rule 35 motion would be made.

11. On June 28, 2001, Mr. Persichetti testified at the _Irizarry_ trial. In the days prior to his testimony, the undersigned and S.A. Kamerman met with Mr. Persichetti at a location in the New York area. The undersigned again told Mr. Persichetti that the E.D.N.Y case would not be discussed. Mr. Persichetti asked, in substance, whether the U.S. Attorney's Office for the E.D.N.Y. would know about his trial testimony in the New Jersey case. The undersigned responded, in substance, that his trial testimony would be a matter of public record, and that, in any event, the E.D.N.Y. would be informed of the fact that he testified at the trial. However, there was no representation, directly or indirectly, that a Rule 35 motion would be made.

12. On July 11, 2001, Elvis Irizarry was found guilty of all counts. At some time following the jury verdict, the undersigned informed Mr. Persichetti and Mr. Jacobs that a letter would be sent to the U.S. Attorney's Office for the Eastern District of New York, informing that office of the specifics of Mr. Persichetti's cooperation in the New Jersey case. This letter was not represented to be, nor can it be, a Rule 35 Motion. When asked, the undersigned explained to Mr. Persichetti following the jury verdict that the only party that legally can

4

file a Rule 35 motion in his matter in the U.S. Attorney for the E.D.N.Y.    Additionally, the undersigned had this same discussion with Mr. Jacobs, who indicated he readily understood that the District of New Jersey cannot file such a motion in the E.D.N.Y. in connection with an E.D.N.Y. case.

13.    On or about October 9, 2001, the undersigned drafted and mailed a letter addressed to Mark B. Feldman, Chief of the Organized Crime Strike Force of the E.D.N.Y.  This letter simply set forth the nature of Mr. Persichetti's cooperation in the New Jersey matter.  A copy of the letter was sent to Mr. Jacobs.

14.    This letter was never represented to be, nor can it be, a Rule 35 motion.  Instead, the undersigned informed both Mr. Persichetti and Mr. Jacobs that the letter was furnished to Mr. Feldman simply so that Mr. Persichetti's role in the New Jersey case would be known to that office and to Mr. Persichetti's attorney.

15.    In conclusion, Mr. Persichetti was never promised a Rule 35 Motion.  Moreover, it was made abundantly clear to him at every stage in the process that there was no such promise, and that no such promise could in fact be made by anyone in the District of New Jersey.

Marc A. Grifilo
Assistant United States Attorney
District of New Jersey

Sworn and Subscribed to before me
this 13th day of February, 2002
at Newark, New Jersey

GAIL G. HORTON
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Oct 18, 2005

6

OCT 25 '01 10:16AM 8                                                          Exhibit 3



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*
*Organized Crime Strike Force*

---

*970 Broad Street, Suite 700*                          *(973)645-2700*
*Newark, NJ 07102*                          *direct dial (973)645-3987*
                                                   *fax (973)645-3988*

October 9, 2001

Mark E. Feldman, Esq.
Chief, Organized Crime Strike Force
United States Attorney's Office
Eastern District of New York
One Pierrepont Plaza
Brooklyn, New York   11201

                   Re: <u>Antonio Persichetti</u>

Dear Mr. Feldman:

        I write this letter to advise you that Antonio Persichetti, who
was prosecuted by your office in a case entitled <u>U.S. v. Persichetti</u>,
94 Cr. 1236 (RJD), has provided valuable cooperation in an
investigation and prosecution in the District of New Jersey.

        Persichetti pleaded guilty in the Eastern District of New York to
a one-count Superseding Information on February 8, 1995.  The U.S.
Attorney for the Eastern District of New York moved for a downward
departure reflecting defendant's substantial assistance to
investigations and prosecutions in both the Eastern and Southern
Districts of New York, and on January 23, 1998, he was sentenced to a
term of 16 years imprisonment.

        A.  <u>Background On the New Jersey Investigation</u>

        Commencing in the latter part of 1998, the FBI in Newark, in
conjunction with the Hudson County Prosecutor's Office Homicide
Division, began investigating a group of individuals in and around
Jersey City, New Jersey.  The investigation focused particularly on a
number of unsolved homicides in northern New Jersey between 1993 and
1998.  In 1999, while investigating a double homicide committed in
1993 in North Bergen, New Jersey, it was learned that one of the
victims had connections to certain organized crime figures in
Brooklyn.  It was also learned that this victim had a connection to
Antonio Persichetti.  Although Persichetti was not in any way a
suspect in this homicide, investigators believed he might possess
valuable information linking the individual who physically committed
the murders to certain crime figures who may have directed that these
murders be committed.

        In late 1999, an FBI Special Agent and a Hudson County Homicide

Detective interviewed Persichetti. Persichetti was shown
photographs of one of the victims of the 1993 North Bergen double
homicide, Joseph Marmora, and recognized that this person was
associated with certain targets of the investigation.  In
addition, Persichetti recalled that Marmora was in the presence
of certain targets within weeks of the murders.  Moreover,
Persichetti was able to identify and name certain organized crime
figures who gave assignments to the criminal group in Jersey
City.

    The leading members of the Jersey City criminal group were
arrested during 1999 and 2000.  With one exception, all
defendants entered guilty pleas to either racketeering or serious
violent offenses.  Only the most violent and prolific member of
the crew, Elvis Irizarry, went to trial.  The six week trial,
which involved allegations of racketeering, five murders and
other serious violent crimes, took place this past summer and
resulted in the defendant being convicted on all counts.
Persichetti agreed to, and did, testify at this trial.

    B.   Persichetti's Testimony

    Persichetti testified that an individual named Massimo
Ranieri was associated with Franco Durso.  This was significant
to the case because other evidence showed that Durso was the
immediate boss of the defendant on trial, Elvis Irizarry.
Irizarry was standing trial for, among many other murders and
violent crimes, the North Bergen double homicide.  Accordingly,
Persichetti assisted the jury in understanding the overall
structure of the criminal group which was responsible for
committing these murders.

    Additionally, Persichetti testified that he was present for
a meeting between Ranieri, Durso and Joseph Marmora.  This was
important testimony because it placed one of the North Bergen
victims in direct contact with two of Irizarry's bosses shortly
before the murders.  Persichetti also testified regarding certain
locations in Brooklyn where Marmora, Ranieri and Durso would
meet, corroborating evidence from telephone records and pen
registers connecting these three individuals.

    Persichetti candidly testified about his criminal history,
giving details, when asked, about the various crimes he
committed.  He exhibited similar candor during each of the many
proffer sessions leading up to his trial testimony.

    For these reasons, Persichetti's cooperation contributed
significantly to the Government's case.

Respectfully submitted,

ROBERT J. CLEARY
United States Attorney

By: MARC A. AGNIFILO
Assistant U.S. Attorney

cc.   Howard L. Jacobs, Esq.

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

*Exhibit 4*

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) *Mr. Thompson Case Manager* | DATE: *9/20/04* |
|---|---|
| FROM: *A.P* | REGISTER NO.: *44930-053* |
| WORK ASSIGNMENT: *orderly* | UNIT: *Shawnee* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

*Please verify That during about November 2000 you witnessed FBI Agent Bruce Kimmerman, One Homicide Detective, and AUSA Mark Engnifio came To debrief me in Shawnee Unit, During which they Told me That the Federal Judge Deary had given Them permission To Talk To me. Please also verify that These men promised me That I wouldn't "Get Screwed" When it came Time for my Rule 35 Sentence Reduction if I continued To cooperate with Them The Information I supplied To US office To solidify thier case was "Contingent" upon me getting A Rule 35 with a Drastic Sentence Reduction*

*Respectfully*
*A.P*

(Do not write below this line)

DISPOSITION:

*The facts you have presented are true.*

| Signature Staff Member *D. Thompson* *DB Case* *Manager* | Date *9-20-2004* |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94



U.S. Department of Justice

10ᵗʰ & Constitution Avenue, N.W.
Criminal Division
Office of Enforcement Operations

International Prisoner Transfer Unit
John C. Keeney Building, 12ᵗʰ Floor
Washington, D.C.  20530

2 8

*Copy provided*
*to inmate*
*7/7/04*
*BW*

*44930-053*
*7-7-04*

Dott. Vittorio Misiti
Dipartimento per gli Affari di Giustizia
Direzione Generale della Giustizia Penale
Ufficio II
Ministero della Giustizia
Via Arenula, 70
00186 Rome
Italy

Re:     Antonio Persichetti AKA Anthony Perischetti; Antonino Perischetti
        Reg. No. 44930-053
        Denial of Request to Transfer to Italy

Dear Dr. Misiti:

This is to advise you that after considering all appropriate factors involved in this matter, the United States has denied the request for transfer to Italy of the above-named Italian national who is currently incarcerated at a Federal Bureau of Prisons Facility.

Sincerely,

Paula A. Wolff, Chief
International Prisoner Transfer Unit

cc:     Alberto Galuccio, First Counselor
        Embassy of Italy
        3000 Whitehaven Street, N.W.
        Washington, D.C.  20008

        Sandra Kaz
        Federal Bureau of Prisons



**U.S. Department of Justice**

10th & Constitution Avenue, N.W.
Criminal Division
Office of Enforcement Operations

*International Prisoner Transfer Unit*
*John C. Keeney Building, 12th Floor*
*Washington, D.C. 200530*

AUG - 5

R E C E I V E D

APR 2 1 2005

INMATE MONITORING SECTION
FEDERAL BUREAU OF PRISONS

Anthony Perischetti
Reg. No. 44930-053
F.C.I. Marianna
Shawnee Unit
P.O. Box 8000
Marianna, Florida 32447

Dear Mr. Perischetti:

This responds to your letter dated July 20, 2004, in which you request the reasons for the denial of your request to transfer to Italy to serve the remainder of your prison term.

This office examines many factors in determining whether a prisoner is suitable for transfer. These factors include a prisoner's rehabilitative prospects and the prisoner's ties to his or her home country. The Department of Justice denied your application primarily for the following reason(s):

You are a domiciliary of the United States, through extended residence in the United States and/or presence of family ties and close family member in the United States; this residence may have been legal or illegal.

The seriousness of your offense precludes your transfer at this time.

You have a long or otherwise significant prior criminal record.

You have a significant history of institutional misconduct.

There is no administrative appeal from this decision. You may reapply in the future. Your application is more likely to be approved in the future if you have maintained the best possible prison record and have attempted to address those reasons for your denial over which you have



some control.  Except as noted above, you may reapply two years after your denial.  If you do reapply, the Department will review the information already in your file as well as any new information you provide.

Sincerely,


Paula A. Wolff, Chief
International Prisoner Transfer Unit

2



U.S. Department of Justice

Federal Bureau of Prisons

Washington, DC 20534

May 11, 2004

MEMORANDUM FOR SALLIE SALIBA, CHIEF, WITNESS SECURITY UNIT
              OFFICE OF ENFORCEMENT OPERATIONS

FROM:        Shella Y. Stephens, Assistant Administrator
             Inmate Monitoring Section

SUBJECT:     PERSICHETTI, ANTHONY
             Reg. No. 44953-053

Attached please find an application for International Prisoner
Transfer pursuant to 18 U.S.C. § 4100 et seq.

Please do not hesitate to contact Jeffrey Woodworth, National CIM
Coordinator at (202) 307-3036 if you have any questions or
concerns regarding this matter.

# CERTIFIED U.S. CASE SUMMARY OF ITALIAN CITIZEN

## PERSONAL DATA:

1. Committed Name: Persichetti, Antonino

2. Reg No:           44930-053

3. Date of Birth:    March19, 1963

4. Marital Status:   Married

5. Place of Birth:   Messina, Italy

6: Nationality:      Italian

7. Employment:       Prior to his incarceration, Persichetti derived income from illegal activities and as salesman for various fruit and vegetable stores.

8: Current Location: Federal Bureau of Prisons

## SENTENCE DATA SUMMARY:

1. Sentence:         16 years; 5 years supervised release

2. Date of Sentence: January 23, 1998

3. Sentencing District: Eastern District of New York

4. Docket Number:    CR 94-1236(S-1)-02

5. Current Offense:  Racketeering

6. Description of Current Offense:

Antonino Persichetti was an associate of the Gambino Organized Crime Family. In that capacity, Persichetti participated in murders, armed robberies, arson, extortion, firearms dealing, and narcotics trafficking with other made members and associate of the Gambino Organized Crime Family.

7. Fine\Assessment\Restitution:     $50.00 felony assessment; completed on 05-04-1998

8. Prior Record:     Possession of Stolen Property; date unknown; conditional discharge.

Criminal Possession of a Weapon; date unknown; 5 years probation, discharged, maximum expiration.

9. Detainers or Pending Charges:     A detainer for possible Deportation has been issued by the Bureau of Immigration and Customs Enforcement.

10. Good Conduct Time Earned:     351 days

11. Meritorious Good Time Earned: Not applicable

12. Projected Release Date:     February 18, 2009

13. Full Term Date:     November 15, 2010

14. Date Sentence Began to Application Date:     6 years, 3 months

15. Prior Credit Time:     1164 days

## SOCIAL DATA:

1. Psychological Evaluation:     Persichetti appears to be in good mental health.

2. Security Level:     High

3. Level of Education Achieved:     8th grade; currently pursuing GED while incarcerated

4. History of Substance Abuse:     Persichetti has prior history of Marijuana, Cocaine and Alcohol use.

5. Current Medical Condition:     Persichetti is assigned to regular duty with no medical restrictions.  He is in good health and is considered fully employable upon release.

6. Institution Work Experience:

| | | |
|---|---|---|
| Food Service | - | 03-24-2004 to current |
| Laundry | - | 04-24-2203 to 04-02-2004 |
| Unit Orderly | - | 02-22-2003 to 03-24-2004 |
| Food Service | - | 12-15-2003 to 01-13-2004 |

7. Type and Number of Incident Reports Received:

<u>Date</u>      <u>Incident</u>

03-24-2004    Refusing Work/Program Assignment
              Refusing to Obey an Order
              Being Insolent to Staff Member

03-19-2004    Destroy Property $100 or Less

05-10-2000    Refusing to Obey an Order

02-15-2000    Possessing a Dangerous Weapon
              Fighting with Another Person

02-18-1999    Threatening Bodily Harm

09-24-1998    Threatening Bodily Harm
              Stealing

07-17-1997    Using Abusive/Obscene Language

10-20-1996    Being Absent from Assignment

05-14-1996    Being Absent from Assignment

8. Program Participation:      Persichetti is currently participating in the GED Program. He
completed Introduction to Creative Technique in Cake Decorating
in May 1997 and completed the Character First group in June
2001.

Prepared By:

Jeffrey Woodworth, National CIM Coordinator                    5/6/04
Inmate Monitoring Section, Central Office                      Date


Reviewed By:

Shella Y. Stephens, Assistant Administrator                    May 11 2004
Inmate Monitoring Section, Central Office                      Date

```
BOP5S  540*23 *              SENTENCE MONITORING              *    04-27-2004
PAGE 001            *        COMPUTATION DATA                 *    13:50:20
                            AS OF 04-27-2004
```

REGNO..: 44930-053 NAME: PERSICHETTI, ANTHONY


FBI NO...........: 922124WA7
ARS1.............:                        DATE OF BIRTH: 03-19-1963
UNIT.............:
DETAINERS........: NO                     QUARTERS.....: S01-110L
                                          NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 08-18-2008

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  02-18-2009 VIA GCT REL

REMARKS.......: NONE

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: NEW YORK, EASTERN DISTRICT
DOCKET NUMBER...................: CR 94-1236(S-1)-02
JUDGE...........................: DEARIE
DATE SENTENCED/PROBATION IMPOSED: 01-23-1998
DATE COMMITTED..................: 01-24-1998
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

               FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $50.00        $00.00          $00.00       $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....: 545
OFF/CHG: T18USC1962(C); RACKETEERING

SENTENCE PROCEDURE.............: 3559 VCCLEA VIOLENT SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: 16 YEARS
TERM OF SUPERVISION............: 5 YEARS
CLASS OF OFFENSE...............: CLASS A FELONY
DATE OF OFFENSE................: 11-16-1994




G0002      MORE PAGES TO FOLLOW . . . .

```
    BOP5S  540*23 *              SENTENCE MONITORING           *      04-27-2004
   PAGE 002 OF 002 *            COMPUTATION DATA               *      13:50:20
                                 AS OF 04-27-2004

   REGNO..: 44930-053 NAME: PERSICHETTI, ANTHONY


   -----------------------CURRENT COMPUTATION NO: 010 ---------------------

   COMPUTATION 010 WAS LAST UPDATED ON 03-31-2000 AT FAI AUTOMATICALLY

   THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
   CURRENT COMPUTATION 010: 010 010

   DATE COMPUTATION BEGAN..........: 01-23-1998
   TOTAL TERM IN EFFECT............:    16 YEARS
   TOTAL TERM IN EFFECT CONVERTED..:    16 YEARS
   EARLIEST DATE OF OFFENSE........: 11-16-1994

   JAIL CREDIT.....................:      FROM DATE      THRU DATE
                                        11-16-1994    01-22-1998

   TOTAL PRIOR CREDIT TIME.........: 1164
   TOTAL INOPERATIVE TIME..........: 0
   TOTAL GCT EARNED AND PROJECTED..: 635
   TOTAL GCT EARNED................: 351
   STATUTORY RELEASE DATE PROJECTED: 02-18-2009
   SIX MONTH /10% DATE.............: N/A
   EXPIRATION FULL TERM DATE.......: 11-15-2010


   PROJECTED SATISFACTION DATE.....: 02-18-2009
   PROJECTED SATISFACTION METHOD...: GCT REL
```

```
S0055        NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

BP-S297.05y  TRANSFER INQUIRY  CDFRM
MAY 94

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| 1. Name: Persichetti, Anthony<br><br>NOMBRE Y APELLIDOS<br><br>NCM | 2. Age: 40 (03-19-1963)<br><br>EDAD<br><br>AGE |
| 3. Register Number: 44930-053<br><br>NUMERO DE REGISTRO<br><br>NUMBER D'ENREGISTREMENT | 4. Country of Citizenship: Italy<br><br>NACIONALIDAD<br><br>NATIONALITE |
| 5. Institution: Inmate Monitoring Section<br>6.              Washington DC<br>INSITUTION<br><br>MAISON D'ARRET | 7. Offense: Racketeering<br><br>DELITO<br><br>CRIME |
| 8. Sentence: 16 years + 5 years supervised<br>9.          release<br>SENTENCIA<br><br>CONDAMNATION | 10. Fine: $50 felony assessment<br><br>MULTA<br><br>AMENDE |

I hereby indicate an interest in being transferred to continue serving the sentence imposed by United
States Judicial Authorities to the country of citizenship indicated above. I understand that this is just
an inquiry to obtain data before the actual request for transfer and is not binding upon either the
government or me.

   Quiero indicar mi interés en ser trasladado al país cuya nacionalidad se menciona más arriba para
   Continuar cumpliendo la condena que me impusieron las autoridades judiciales de los Estados Unidos.
   Comprendo que se trata de una simple encuesta para obtener información previa a la solicitud para el
   traslado. En nada compremete al recluso ni al Gobierno de los Estados Unidos.

Je certifie par là mon désir d'être transféré au pays de citoyenneté indique cidessus, afin de contnuer
a puger la peine qui me fut imposee par les Autorites Judiciares des Etats-Unis. Je reconnais que cecine
constitute qu'une simple demande d'Information précédant la requête proprement dite pour un transfert et
que celle-ci n'engage ni le gouvernement des Etats-Unis ni ma personne.

| Signature: *Anthony Persichetti* | Date: February 22, 2004 |
|---|---|
| FIRMA | FECHA |
| SIGNATURE | DATE |

I hereby indicate that I am not now interested in being transferred to continue serving the sentence
imposed by the United States Judicial authorities, to the country of the citizenship indicated above.

   Quiero dejar constancia que no estoy interesado / a en ser trasladado / a al país cuya
   nacionalidad se menciona más arriba para continuar cumpliendo la condena que me impusieron las
   autoridades judiciales de los Estados Unidos.

   Je fais savoir par là que maintenant je ne suis pas intéressé par un tranfert au pays de
   citoyenneté indiqué ci-dessus, afin de continuer á purger la peine qui me fut imposée par les
   Autorites Judiciaries des Etats-Unis.

| Signature | Date |
|---|---|
| FIRMA | FECHA |
| SIGNATURE | DATE |

(This form may be replicated via WP)

                                                          Replaces BP-297(51) of MAR 93

Case 1:94-cr-01236-RJD   Document 311   Filed 03/24/06   Page 26 of 38 PageID #: 26

I authorize release to the United States Department of Justice all confidential records and information concerning me.

El abajo firmante authoriza al Funcionario del el Departamento de Justicia de los Estados Unidos a disponer y obtener todos los records e información confidencial referente mi persona.

J'autorise le délégué à U.S. Department of Justice à avoir acces á tous documents et informations de nature confidentielle qui me concernment.

| 1. Name (Last, First, Middle)<br>NOMBRE (Apellido, Primero & Segundo<br>NOM (de famille, prenom, mon de jeune fille)<br><br>Persichetti, Anthony | 2. Date of Birth<br>Fecha de nacimiento<br>DATE DE NAISSANCE<br><br>03-19-1963 |
|---|---|
| 3. Signature<br>Firma<br>Signature<br><br>*[signature]* | 4. Date signed<br>Fecha de la firma<br>DATE DE SIGNATURE<br><br>04-22-2004 |

(This form may be replicated via WP)

Replaces BP-301(51) of MAR 93

BP-S299.051    INMATE INFORMATION PROVIDED TO TREATY NATION  CDFRM
MAY 94
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| 1. Name<br>Nombre<br>Nom    Persichetti, Anthony | 2. Date of Birth<br>Fecha de nacimiento    03-19-1963<br>Date de naissance |
| 3. Offense    Racketeering<br>Delito<br>Crime | 4. Sentence 16 years + 5 years supervised release<br>Sentencia<br>Condamnation |

5. Length of time served including jail credits
   Tiempo quie ha cumplido de su condena    6 years and 3 months
   Durée de temps passée en prison (Y compris les Credits de Prison)

6. Statutory good time and meritorious good time earned as of ____N/A____
   Reducción de tiempo otorgado por ley y reducción de tiempo por mérito/trabajo acumlado
   hasta _____
   Nombre statutaire et méritoire de jours de bonne conduite accumelées à parir de _____

   a. Statutory good time    N/A
      Reducción de tiempo otorgado por Ley
      Nombre statutaire

   b. Meritorious Good Time    N/A
      Reducción de tiempo por mérito/ trabajo
      Nombre meritoire

7. Good Conduct Time (CCCA)    351 days
   Credito por buen compartimiento
   Remise de peine pour bonne conduite

| | |
|---|---|
| 8. Completed By  Jeff Woodworth, IMS<br>Completado por<br>Rempli par | 9. Date 4/26/04<br>Fecha<br>Date |
| 10. Notarized by<br>Autorizado ante Notario<br>Certifié par | 11. Date 4/26/04<br>Fecha<br>Date |

Attachments:                    CASE MANAGER
                     "Authorized by the Act of July 27, 1955,
Anexos:              as amended, to administer oaths
                     (18 U.S.C. 4004)."
Annexes:

Certified Copy of J & C

Copia del Certificado del jucio y Auto de Prison

Copie certifée de J&C

Classification Study

Observaciones y Clasificación

Etude de classification

(This form may be replicated via WP)

Replaces BP-299(51) of MAR 93

BP-S298.051 NOTICE REGARDING INTERNATIONAL PRISONER TRANSFER   CDFRM
MAY 94
U.S. DEPARTMENT OF JUSTICE                        FEDERAL BUREAU OF PRISONS

TO:   Shella Stephens, Assistant Administrator, Inmate Monitoring Section

FROM: Jeffrey Woodworth, National CIM Coordinator, Inmate Monitoring Section

This inmate has indicated an interest in being transferred to his/her country of citizenship
to complete service of a term imposed in a United States Court. The inmate is qualified for
transfer. The following information is provided to facilitate the review process.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Inmates Name Anthony Persichetti            Register No.  44930-053

Institution  Inmate Monitoring Section      Country of Citizenship  Italy

Offense(s)  Racketeering                    Sentence(s) 16 years + 5 years supervised release

Date(s) of Sentence  01-23-1998             Sentencing Court(s) Eastern District of New York

Docket Number(s) CR 94-1236 (s-1)-02        Inmate's Sex  Male

Date Eligible for Parole  N/A               Date of Last Parole Hearing  N/A

Latest Parole Action  N/A                   Release Date  02-18-2009 via GCT

Mandatory Release Date  N/A                 Full term Expiration Date 11-15-2010

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Is Proof of Citizenship Available? _X_ Yes ___ No If yes, specify and attach a copy of Proof
of Citizenship.   Passport, Green Card, and Social Security Number

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Any other pertinent information: Please note that Anthony Persichetti was authorized for the
Witness Security Program in 1995 and is currently housed in a Protective Custody Unit.
Persichetti was associated with the Gambino Organized Crime Family.  Specifically, he was a
member of the Louis Vallario crew of the family, and participated in murder, armed robberies,
extortion, firearms dealing, and narcotics trafficking.  Persichetti testified about the
operations of the Vallario crew, the chain of command, and the members and associates who
engaged in illegal activities.  He also testified about crimes he committed with Norman
Dupont, a Gambino associate who was very close to John Gotti, the former Boss of the Gambino
Family.

(This form may be replicated via WP)                    Replaces BP-298(51) of DEC 81















STATE USAGE
NFF SECOND

SUBMISSION | APPROXIMATE CLASS | AMPUTATION | SCAR

ATE USAGE

LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX
Persichetti, Anthony

SIGNATURE OF PERSON FINGERPRINTED
Anthony Persichetti

SOCIAL SECURITY NO.

LEAVE BLANK

ALIASES/MAIDEN
LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

| NO. | STATE IDENTIFICATION NO. | DATE OF BIRTH MM DD YY | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| n/a | | 03-19-1963 | M | W | 6'3" | 208 | BN | BK |

1. R. THUMB 2. R. INDEX 3. R. MIDDLE 4. R. RING 5. R. LITTLE

6. L. THUMB 7. L. INDEX 8. L. MIDDLE 9. L. RING 10. L. LITTLE

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | L. THUMB | R. THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

[redacted]

SOCIAL SECURITY

THIS NUMBER HAS BEEN ESTABLISHED FOR

ANTHONY PERSICHETTI

SIGNATURE

PERSICHETTI

ANTONINO

ITALIANA

18 MARZO 1963

MESSINA

MAR 2 1 1991

IL MINISTRO

USA

M. 1, 75

MARRONI




DISCIPLINE HEARING OFFICER REPORT
U.S. DEPARTMENT OF JUSTICE

BP-S305.052 MAY 94
FEDERAL BUREAU OF PRISONS

| INSTITUTION | FCI ALLENWOOD | INCIDENT REPORT NUMBER | | 1343510 |
|---|---|---|---|---|
| INMATE NAME | A.P. | REG NO | 44930-053 | UNIT | Unit 5 |
| DATE OF INCIDENT | 5/19/05 | DATE OF INCIDENT REPORT | | 5/19/05 |

| OFFENSE CODE(S) | 317 and 312 |
|---|---|
| SUMMARY OF CHARGES | Failure to Follow Safety Regulations Insolence Towards Staff Member |

**I.   NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on

(date)   5/19/05   (at)   6:50 p.m.   (by)   J. Lockwood

B. The DHO Hearing was held on (date)   5/25/05   (at)   9:01 a.m.

C. The inmate was advised of his rights before the DHO by (staff member):

Mr. Bartolo   on (date)   5/20/05   and a copy

of the advisement of rights form is attached.

**II.   STAFF REPRESENTATIVE**

| A. Inmate waived right to staff representative. | Yes | x | No | |
|---|---|---|---|---|

B. Inmate requested staff representative and   appeared.

C. Requested staff representative declined or could not appear.  The inmate was advised of the option to postpone hearing to obtain another representative with the result: N/A

| D. Warden appointed Rep. | | appeared. |
|---|---|---|

E. Staff representative statement:

**III.   PRESENTATION OF EVIDENCE**

| A. Inmate admits | | denies | | neither | x |
|---|---|---|---|---|---|

B. Summary of inmate statement:

At the onset of this hearing, A.P. was advised of his Rights before the DHO, indicated he understood them (waived staff representation and witness testimony) and chose to provide the following statement:

A.P. stated, "There was a fire drill but the last time there was one, I was in school, so I didn't know what to do."  A.P. stated, "When I was trying to leave, they locked me up."  The DHO asked A.P. if he was familiar with the procedures of a fire drill and if there were any other inmates in the unit when the alarm sounded.  A.P. answered, "I didn't see any other inmate in the unit and it would have been nice to see someone come around and tell me to leave or that there was going to be a shakedown of the unit."  A.P. further stated, "When the alarm would sound if someone was smoking, we never had to leave."  A.P. presented a poor attitude during and throughout the hearing.  At the conclusion of the hearing; A.P. stated, "Fuck that, we're done and I'm gonna sue every one of you."

No procedural issues were cited, nor was any documentary evidence provided for consideration.  Inculpatory and exculpatory evidence was verbally provided by the DHO to the extent believed practical under FOIAE/PA policy.  The inmate was advised to make any formal request for documents to the Central Office.

Page 1 of 4

| C. Witness(es): | | | | | |
|---|---|---|---|---|---|
| 1. The Inmate requested witness(es). | | Yes: | | No | x |

2. The following persons were called as witnesses at this hearing and appeared. (Include each witnesses' name, title, reg number and statement as appropriate.

3. The following persons requested were not called for the reason(s) given:

| 4. Unavailable witnesses were requested to submit written | Yes | | No | | N/A | X |
|---|---|---|---|---|---|---|

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents:

Memorandum from Officer Foura
Inmate Information Handbook - Insert (Page 25) dated January – 2005

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:

N/A

| IV. FINDINGS OF THE DHO | |
|---|---|
| x | A. The act(s) was/were committed as charged. |
| X | B. The following act(s) was/were committed: 317 & 312 (2nd. Code 312 Offense) |
| | C. No prohibited act(s) was/were committed: Expunge according to PS 5270.07. |

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.)

During this discipline hearing regarding A.P. Register No. 44930-053 for the charge(s) of Failure to Follow Safety Regulations and Insolence Towards a Staff Member, Codes 317 and 312. The following information was evidentiary and documented by the DHO in his findings.

A.P. 'S involvement in the incident as noted in Section 11 of Incident Report 1343510, as provided by D. Moyer, Unit 5 Unit Manager, was viewed as inculpatory in this case. Mr. Moyer writes: On 5/19/05, at or about 8:50 a.m., a fire drill was conducted in Unit 5 in conjunction with a mass shakedown. All inmates exited the unit with the exception of Inmate A.P. After the alarm sounded for about 15 minutes, I walked the ranges to secure the unit. When I arrived at cell 2212, Inmate A.P. was standing by his bed. I ordered Inmate A.P. to depart the area. He began to become boisterous and yelled he never had to leave during a fire drill. I again ordered him to depart the area. He attempted to get in his locker and retrieve his radio and headphones. I ordered him to put the items back into his locker. I summoned for Officer Foura to escort A.P. to the SHU. Inmate A.P. continued to verbalize his displeasure of being placed in SHU.

Inculpatory evidence in the form of a memorandum from Officer D. Foura dated 5/24/05, corroborated the evidence cited in the incident report in this case. Officer Foura indicated on 5/19/05, Mr. Moyer asked me to assist in escorting Inmate A.P. to the Special Housing Unit in Unit 5 for Failure to Follow Safety Regulations and Insolence Towards Staff. Upon arrival, Inmate A.P. stated, "I'm ready, let's go." The fire alarm was summoned and continued to alarm for approximately five minutes and all inmates evacuated from the unit with the exception of Inmate A.P. I escorted him to SHU without further incident.

Inculpatory evidence in the form of the Inmate Information Handbook (Page 25) dated January – 2005 corroborated the evidence cited in this report. The handbook indicates inmates are required to evacuate your respective area at the announcement of any fire drill. This can be found in the Inmate Handbook which is issued to inmates during their orientation briefing.

The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information and by virtue of their position, are obligated to be truthful.  Inmate A.P.'s refusal to exit the unit upon the activation and announcement of the fire drill clearly displays his refusal and interference of following safety regulations.  His mannerisms and actions toward the unit manager when confronted about his failure to exit the unit were interpreted as being insolent in manner and clearly disrupted the orderly running of the unit and interfered with staff's performance of their responsibilities.  His previous and repetitive misconduct and insolent behavior clearly shows his propensity to continue his disruptive behavior.

Upon questioning by the DHO, Inmate A.P. neither admitted nor denied the charge(s).  He elaborated upon his plea by stating, when he was trying to leave, the officers locked him up.  A.P. displayed a poor attitude throughout the hearing by becoming loud and boisterous at the conclusion of the hearing.

After the consideration of evidence listed in Section V of this hearing report and documented above, the DHO has drawn the conclusion the greater weight of the evidence / some facts, listed in paragraphs two through four above, support(s) the finding Inmate A.P., Register No. 44930-053, committed the prohibited act(s) of Failure to Follow Safety Regulations and Insolence Toward staff, Codes 317 and 312 on 5/19/05, at or about 8:50 a.m., in Unit 5, FCI Allenwood, PA.

## VI.  SANCTION OR ACTION TAKEN

Code 317 - Disciplinary Segregation - 15 Days
          Disallowance of Good Conduct Time - 13 Days
          Comp 010 Law V
          Loss of Privileges (Commissary) - 180 Days

Code 312 - 2nd. Code 312 Offense within 12 months
          Disciplinary Segregation - 21 Days
          Disallowance of Good Conduct Time - 18 Days
          Comp 010 Law V
          Loss of Privileges (Phone) - 1 Year
          Loss of Privileges (Visit) - 1 Year

    *All sanctions are to be served consecutive to like sanctions previously imposed.

## VII.  REASON FOR SANCTION OR ACTION TAKEN

A.P.'S insolent behavior directed at a staff member (2nd. Code 312 Offense within 12 months) indicated a disrespect for authority figures.  This action threatens the security and orderly running of the facility, as to allow inmates to be disrespectful would create chaos and severely limit staff's ability to control inmate behavior.  A.P.'S refusal to exit the unit upon the activation of the unit's fire alarm system hindered the ability of staff to insure the safety of the inmates housed in the unit and to successfully pass the safety offices' inspection.  When an alarm is sounded, all inmates housed in the unit are to exit the unit without delay.  This is covered in the Safety Office's code of regulations and is briefed during A&O briefings.  Accordingly, Disciplinary Segregation and the Disallowance of Good Conduct Time is sanctioned to punish A.P. for his misconduct while the Loss of Privileges (Phone, Commissary and Visit) is sanctioned in an effort to deter him from this type of behavior in the future.

VIII. APPEAL RIGHTS: The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

| | | Yes | X | No | | |
|---|---|---|---|---|---|---|

IX. DISCIPLINE HEARING OFFICER

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| K. Bittenbender | | 5/25/05 |
| Report sent to inmate by | Signature: | Date: 5/25/05 |

Page 4 of 4

BP-S288.012
MAY 1994
U.S. DEPARTMENT OF JUSTICE                                      FEDERAL BUREAU OF PRISONS

---

1. Name Of Institution: FCI Allenwood
                    Part I – Incident Report

| 2. Name Of Inmate A.P. | 3. Register Number 44930-053 | 4. Date Of Incident May 19, 2005 | 5. Time 0910 |
|---|---|---|---|

| 6. Place Of Incident Unit 5 Cell 2212 | 7. Assignment Unassg | 8. Unit 5 | |

9. Incident  317 – Failure to Follow Safety Regulations
              312 – Insolence Towards a Staff Member

11. Description Of Incident (Date: 05/19/05 Time:0850    Staff become aware of incident)
On 5/19/05, at 0850, a fire drill was conducted in Unit 5 in conjunction with a mass
shakedown.  All inmates exited the Unit with the exception of inmate A.P. No:44930-
053. After the alarm sounded for about 15 minutes, I walked the ranges to secure the
Unit.  When I arrived at cell 2212, inmate A.P. was standing by his bed.  I ordered
inmate A.P. to depart the area.  He began to become boisterous and yelled he never had
to leave during a fire drill.  I again ordered him to depart the area.  He attempted to
get in his locker and retrieve his radio and headphones.  I ordered his to put the items
back in his locker.  I summoned Officer Foura to escort inmate A.P. to the SHU.  Inmate
A.P. continued to verbalize his displeasure of being placed in SHU.

| 12. Signature Of Reporting Employee *Douglas Moyer* | Date And Time 05/19/05 1030 | 13. Name And Title (Printed) Douglas Moyer, Unit Manager |
|---|---|---|

| 14. Incident Report Delivered To Above Inmate By *J Lockwood* | 15. Date Incident Report Delivered 5/19/05 | 16. time Incident Report Delivered 6:50pm |
|---|---|---|

                    Part II – Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident *Not Guilty, Last Time
I had a Fire Drill I was in school. This is what you call retaliation
From the Unit Manager to A.P.*

---

| 18. A. It Is The Finding Of The Committee That You: | B. XX The Committee Is Referring The Charge(s) To The DHO For Further Hearing. |
|---|---|
| _____ Committed The Following Prohibited Act. | |
| _____ Did Not Commit A Prohibited Act. | C. _____ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 Calendar Days. |

19. Committee Decision Is Based On The Following Information *Due to repetitive type
incidents, the UDC is referring this report to the DHO for sanctions not available
at the UDC level to deter future behavior of this nature*

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO
finding inmate committed prohibited act) *UDC recommends maximum sanctions
on both acts based on repetitiveness type behavior.*

21. Date And Time Of Action  5-20-05  1030    (The UDC Chairman's Signature Next To
His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects
The UDC Proceedings.)

| *Bartolo Venetz* | *WRFIN Gantt* | |
|---|---|---|
| Chairman (Typed Name/signature) | Member (Typed Name) | Member (Typed Name) |

---

Record Copy – Central File Record;  Copy – DHO;  Copy – Inmate After UDC Action;  Copy –
Inmate Within 24 Hours Of Part I Preparation
(This Form May Be Replicated Via WP)                        Replaces BP-288(52) Of Jan 88

BP-S288.052   INCIDENT REPORT   CDFRM
MAY 1994
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| 1. Name Of Institution: FCI Allenwood |
|---|

### Part I - Incident Report

| 2. Name Of Inmate<br>A.P. | 3. Register Number<br>44930-053 | 4. Date Of Incident<br>May 19, 2005 | 5. Time<br>0910 |
|---|---|---|---|
| 6. Place Of Incident<br>Unit 5 Cell 2212 | 7. Assignment<br>Unassg | 8. Unit<br>5 | |

| 9. Incident 317 - Failure to Follow Safety Regulations<br>312 - Insolence Towards a Staff Member |
|---|

11. Description Of Incident (Date: 05/19/05 Time:0850   Staff become aware of incident)
On 5/19/05, at 0850, a fire drill was conducted in Unit 5 in conjunction with a mass shakedown. All inmates exited the Unit with the exception of inmate A.P. Reg. No:44930-053. After the alarm sounded for about 15 minutes, I walked the ranges to secure the Unit. When I arrived at cell 2212, inmate A.P. was standing by his bed. I ordered inmate A.P. to depart the area. He began to become boisterous and yelled he never had to leave during a fire drill. I again ordered him to depart the area. He attempted to get in his locker and retrieve his radio and headphones. I ordered his to put the items back in his locker. I summoned Officer Foura to escort inmate A.P. to the SHU. Inmate A.P. continued to verbalize his displeasure of being placed in SHU.

| 12. Signature Of Reporting Employee<br>*Douglas Moyer* | Date And Time<br>05/19/05 1030 | 13. Name And Title (Printed)<br>Douglas Moyer, Unit Manager |
|---|---|---|
| 14. Incident Report Delivered To Above Inmate By<br>*J Lockwood* | 15. Date Incident<br>Report Delivered<br>5/19/05 | 16.time Incident<br>Report Delivered<br>6:50pm |

### Part II – Committee Action

17. Comments Of Inmate To Committee Regarding Above Incident

| 18. A. It Is The Finding Of The Committee That You:<br>_____ Committed The Following Prohibited Act.<br><br>_____ Did Not Commit A Prohibited Act. | B. _____ The Committee Is Referring The Charge(s) To The DHO For Further Hearing.<br>C. _____ The Committee Advised The Inmate Of Its Finding And Of The Right To File An Appeal Within 15 Calendar Days. |
|---|---|

19. Committee Decision Is Based On The Following Information


20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)


21. Date And Time Of Action _____ (The UDC Chairman's Signature Next To His Name Certifies Who Sat On The UDC And That The Completed Report Accurately Reflects The UDC Proceedings.)

| Chairman (Typed Name/signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

Record Copy - Central File Record;   Copy - DHO;   Copy - Inmate After UDC Action;   Copy - Inmate Within 24 Hours Of Part I Preparation
(This Form May Be Replicated Via WP)                         Replaces BP-288(52) Of Jan 88